UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSICA A. GUNTER,

    Plaintiff,

v.                                                        Case No: 8:20-cv-1546-T-36TGW

CCRC OPCO-FREEDOM SQUARE, LLC,
*et al.*,

    Defendants.
_____/

## **ORDER**

This matter comes before the Court on Plaintiff's Motion to Remand (Doc. 33). In the motion, Plaintiff, Jessica Gunter, as Personal Representative of the Estate of Donald J. Jack, seeks an Order remanding this case to the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida. Defendants, CCRC OPCO-Freedom Square, LLC; Healthpeak Properties, Inc.; Brookdale Senior Living, Inc.; BKD Twenty-One Management Company, Inc.; American Retirement Corporation; Life Care Services, LLC; and Cynthia Ayala (collectively "Defendants"), filed a response in opposition (Doc. 36). Defendants contend the motion to remand should be denied because the Public Readiness and Emergency Preparedness Act ("PREP" Act), 42 U.S.C. § 247d-6d, preempts Plaintiff's claims and supplies federal subject matter jurisdiction. The parties filed additional supplemental authority supporting their respective positions. *See* Docs. 35, 37, 38, 41, 49, 50, 51.[1] The Court, having considered the motion, the response, and being fully advised in the premises, will grant the motion and remand this case to state court.

---

[1] Although docketed as a response, Doc. 49 is titled a motion for oral argument in opposition to Plaintiff's motion to remand. *See* Doc. 49 at 1. The request for oral argument is denied. Both sides have thoroughly briefed the matter, including filing multiple supplements, and thus the Court concludes oral argument is unnecessary to determine the issues. Moreover, contrary to

**I.      BACKGROUND**

This case arises out of claims of nursing home negligence that allegedly resulted in the death of Donald Jack ("Jack") during his residency at Defendants' skilled nursing facility known as Seminole Pavilion Rehabilitation and Nursing Services ("the Facility"). Plaintiff, Jessica Gunter, is the Personal Representative for the Estate of Jack. Doc. 33-1 at 42. She filed a four-count Complaint in state court on behalf of the Estate and the survivors seeking damages due to Jack's death. Doc. 33-1. The Complaint sues the Facility's administrator, Cynthia Ayala, and five corporate Defendants who are alleged to be owners, operators, and/or managers of the Facility and the property. *Id.*

Plaintiff alleges that Defendants were on high-alert for COVID-19[2] since January 2020. *Id.* ¶ 50. On March 4, 2020, Defendants represented to staff, residents and relatives that Defendants were taking actions to address COVID-19 concerns. *Id.* ¶ 41. On March 13, 2020, the Florida Governor ordered all nursing home facilities to lock down and implemented a visitation ban in an effort to mitigate the risk to Florida's elderly population who are highly vulnerable to COVID-19, particularly those individuals who also have certain underlying medical conditions. *Id.* ¶ 44. On March 15, 2020, Defendants updated their website with additional actions Defendants continued to take to address COVID-19 concerns. *Id.* ¶ 45.

---

Defendants' claim that these issues are one of first impression, the applicability of the PREP Act's immunity in the context of a nursing home negligence case has been addressed recently by several other jurisdictions. *See Sherod v. Comprehensive Healthcare Mgmt. Svcs., LLC*, No. 20cv1198, 2020 WL 6140474 (W.D. Pa. Oct. 16, 2020); *Martin v. Serrano Post Acute LLC*, No. 20-5937DSF (SKx), 2020 WL 5422949 (C.D. Cal. Sept. 10, 2020); *Lutz v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2316-HLT-JPO, 2020 WL 4815100 (D. Kan. Aug. 19, 2020); *Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, No. 20-6605(KM)(ESK), 2020 WL 4671091 (D. N.J. Aug. 12, 2020).
[2] Coronavirus disease 2019, known as COVID-19, is the illness caused by the SARS-CoV-2 virus. On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic.

Jack admitted himself to the Facility on or about April 2, 2020, for short-term rehabilitation due to generalized weakness resulting from chemotherapy treatment for his recent diagnosis of Hodgkin's Lymphoma. *Id.* ¶ 47. He was 75 years old at the time. *Id.* At the time of his admission, Jack had various diagnoses, including Hodgkin's Lymphoma, Type II diabetes, and abnormality of albumin. *Id.* ¶ 48. Due to his age and underlying medical conditions, Defendants knew Jack was one of the residents highly vulnerable to COVID-19. *Id.* ¶ 49. Notwithstanding this knowledge, Defendants are alleged to have failed to implement adequate protocols, service, and care to control and minimize the spread of the infection at the Facility. *Id.* ¶ 51.

On April 16, 2020, lab results confirmed Jack was positive for COVID-19. *Id.* ¶ 61. As of that date, approximately 30 residents and staff members tested positive for COVID-19. *Id.* ¶ 62. The Facility began transferring residents to area hospitals because it was overwhelmed by the outbreak of COVID-19. *Id.* ¶ 63.

On April 17, 2020, Jack, along with the remaining Facility residents were transferred to local hospitals. *Id.* ¶ 64. On April 21, 2020, Jack died as a result of COVID-19, which he contracted while a resident of Defendants' Facility. *Id.* ¶ 66. Plaintiff contends that the Facility has a history of insufficient infection control, noting documented Department of Health citations in 2018 and 2019. *Id.* ¶¶ 68, 69.

Plaintiff alleges that Defendants' negligent acts and omissions included the following: failing to properly use resident funds; failing to have an adequate emergency preparedness plan; failing to implement adequate safety protocols to minimize the risk and spread of COVID-19; failing to implement an adequate system for identifying, reporting, preventing and controlling infections and communicable diseases; failing to notify authorities, staff, residents and relatives of the potential dangers of COVID-19 and the positive cases at the Facility; forcing staff to reuse

3

personal protection equipment ("PPE"); failing to supply proper masks and gowns; failing to follow Center for Disease Control ("CDC") guidelines; failing to communicate the outbreak to authorities and avail themselves of available PPE; failing to implement safety protocols and disinfect common areas to minimize the spread of the virus; failing to provide adequate staff in number and training; failing to be forthcoming about the outbreak with employees, residents and relatives; reducing basic cleaning practices for which the residents pay for; permitting widespread safety failures such as inadequate staff and equipment; having inadequate management oversight; and permitting asymptomatic staff who had been exposed to COVID-19 to continue to work at the Facility. Doc. 33-1 ¶ 51.

On June 8, 2020, Plaintiff filed a four-count complaint asserting solely state law claims against Defendants in the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County. Plaintiff sues Defendants for breach of fiduciary duty (Count I), aiding and abetting breach of fiduciary duty (Count II), violations of Florida Statutes § 415.1111 (Count III), and violations of Florida's Deceptive and Unfair Trade Practices Act § 501.201, *et seq*. (Count IV). Doc. 33-1. Defendants timely removed the case to this Court. Doc. 1. In their Notice of Removal, Defendants contend jurisdiction is proper because Plaintiff's Complaint asserts a claim "arising under" federal law within the meaning of § 1331.[3] *Id.* ¶ 7. Specifically, Defendants submit that Plaintiff's Complaint presents a federal question under the Public Readiness and Emergency Preparedness Act (PREP Act), 42 U.S.C.A. §§ 247d-6d, 247d-6e (2020). Defendant argues that where a federal statute, such as PREP, provides the exclusive remedy for the substance of the allegations and relief sought in the Complaint, federal law expressly preempts state law for purposes of federal question jurisdiction.

---

[3] Diversity jurisdiction is not alleged.

**II.     The PREP Act**

The PREP Act was enacted December 30, 2005, and "authorizes the Secretary of Health and Human Services (the Secretary) to issue a Declaration to provide liability immunity to certain individuals and entities (Covered Persons) against any claim of loss caused by, arising out of, relating to, or resulting from the manufacture, distribution, administration, or use of medical countermeasures (Covered Countermeasures), except for claims involving "willful misconduct" as defined in the PREP Act. *Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19*, 85 FR 15198-01 (Dep't of Health and Human Svcs., Mar. 17, 2020). Effective February 4, 2020, the Secretary issued a Declaration to provide liability immunity for activities related to medical countermeasures against COVID-19. *Id.* The PREP Act defines "covered countermeasure" as a qualified pandemic or epidemic product, drug, biological product, or device. *See* 42 U.S.C. §§ 247d-6d(i)(1); 247d-6b(c)(1)(B); 247d-6d(i)(7). The term "covered person" under the PREP Act "when used with respect to the administration or use of a covered countermeasure means . . . a person or entity that is (i) a manufacturer of such countermeasure; (ii) a distributor of such countermeasure; (iii) a program planner of such countermeasure; (iv) a qualified person who prescribed, administered, or dispensed such countermeasure; or (v) an official, agent, or employee of a person or entity described in clause (i), (ii), (iii), or (iv)." 42 U.S.C. § 247d-6d(i)(2).  The Act provides a civil remedy to compensate individuals through the Countermeasures Injury Compensation Fund for injuries resulting from the manufacture, testing, development, distribution, administration, or use of one or more Covered Countermeasures.

## III. DISCUSSION

Plaintiff urges remand is warranted because her Complaint does not present a federal question and Plaintiff's claims do not fall within the scope of the PREP Act. The Court agrees. When evaluating whether a case arises under federal law, this Court "is guided by the 'well-pleaded complaint' rule, which provides that the plaintiff's properly pleaded complaint governs the jurisdictional determination." *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)); *see Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("[T]he question whether a claim 'arises under' federal law [for purposes of removal] must be determined by reference to the 'well-pleaded complaint.'").

Here, it is undisputed Plaintiff has alleged purely state law causes of action. Plaintiff alleges two claims based on Florida common law (Counts I and II) and two claims based on violations of Florida statutory law (Counts III and IV). Plaintiff is the master of her Complaint and may prevent removal by choosing not to allege a federal claim. *Blab*, 182 F.3d at 854.

Defendants argue that, notwithstanding the well-pleaded complaint rule, this case falls within the narrow circumstance of a federal law's complete preemption of the state tort causes of action. Defendants contend the PREP Act governs the claims in this case, and as such, jurisdiction is proper in federal court. Defendants are correct that complete preemption allows for "a narrowly drawn means of assessing federal removal jurisdiction." *Blab*, 182 F.3d at 854. However, the Court concludes the PREP Act is inapplicable here as discussed below.

Complete preemption occurs when "the pre-emptive force of a statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393

6

(1987). Limited applications of the doctrine have been seen in the context of Labor Management Relations Act (LMRA) claims, *see Avco Corp. v. Aero Lodge No.* 735, 390 U.S. 557 (1968), and in Employee Retirement Income Security Act (ERISA) claims, *see Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23–24 (1983); *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63–64 (1987). *See also Cmty. State Bank v. Strong*, 651 F.3d 1241, 1260 n.16 (11th Cir. 2011) ("Complete preemption is a rare doctrine . . . .").

Defendants have raised the PREP Act as an affirmative defense here, claiming that the Act provides the sole civil remedy for those circumstances implicating covered countermeasures such that Plaintiff's sole remedy is to seek compensation from the Covered Countermeasures Process Fund by making requests for benefits under the Countermeasures Injury Compensation Fund (CICP). It is clear, however, that "the presence of a federal defense does not make the case removable, even if the defense is preemption and even if the validity of the preemption defense is the only issue to be resolved in the case." *Blab*, 182 F.3d at 854 (citing *Caterpillar*, 482 U.S. at 393). A review of Plaintiff's claims reveals that the allegations challenge, among other things, the Defendants' negligent conduct in failing to properly staff the Facility, failing to effectively communicate with residents and families, failing to provide necessary medical supplies to the staff, reducing the cleaning practices in the Facility, and failing to properly use resident's funds. These acts and omissions have nothing to do with the administration of a qualified pandemic or epidemic product, drug, biological product, or device for which the PREP Act provides immunity.

The United States District Court in New Jersey had occasion to recently consider this same issue in the companion cases *Estate of Maglioli v. Andover Subacute Rehabilitation Center*, No. 20-6605 (KM)(ESK), and *Estate of Kaegi v. Andover Subacute Rehabilitation Center II*, No. 20-6985 (KM)(ESK), 2020 WL 4671091 (D. N.J. Aug. 12, 2020). Although not binding, the Court

finds the opinion persuasive. The cases arose out of treatment of residents at two nursing home facilities owned and/or operated by defendants. The residents died while in defendants' care, allegedly due to defendants' failure to exercise due care with respect to the coronavirus infections. *Id.* at *2. The plaintiffs' complaints, which were filed in state court, alleged only state law claims. *Id.* Defendants removed the cases on the basis that plaintiffs' claims are preempted by the PREP Act. *Id.* In finding that removal was improper, the court noted that the PREP Act covers the administration and distribution of products meant to curb the spread of COVID-19, and is not, by its plain terms, intended to cover generally the care received by patients in their healthcare facilities. *Id.* at 9.

The New Jersey District Court further observed that guidance from the Department of Health and Human Services (DHH) suggests that the PREP Act does not "occupy the field" of negligence and malpractice claims. *Id.* "[I]t is the Secretary's interpretation . . . the Act precludes, for example, liability claims alleging negligence by a manufacturer in creating a vaccine, or negligence by a health care provider in prescribing the wrong dose, absent willful misconduct." https://www.phe.gov/Preparedness/legal/prepact/Pages/COVID19.aspx. Thus, the Act is confined to addressing claims related to the administration of certain countermeasures and does not seek to completely preempt the type of state law negligence claims asserted here.

In a factually similar case from the District Court of Kansas, that court found that the defendants' PREP Act affirmative defense was insufficient to establish federal court jurisdiction and support removal where the plaintiff's complaint alleged that the nursing home resident died because of defendants' failure to take preventative measures to stop the entry and spread of COVID-19 within the facility. *See Lutz v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2316-HLT-JPO, 2020 WL 4815100 (D. Kan. Aug. 19, 2020). "The PREP Act preempts state laws that create

different standards regarding covered countermeasures." *Id.* at \*5 (citing 42 U.S.C. § 247d-6d(b)(8). Like in *Lutz*, Plaintiff does not allege a claim under the PREP Act, nor does she allege any claim under a state law that differs or conflicts with the PREP Act. Further, the Complaint does not raise that the decedent's death was causally connected to the administration or use of any drug, biological product, or device. As the party invoking the Court's jurisdiction, it is Defendants' burden to show that Plaintiff's allegations fall within the purview of the PREP Act. *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998) ("removing party bears the burden of showing the existence of federal jurisdiction"). Courts construe removal jurisdiction narrowly, and any doubts regarding the existence of federal jurisdiction and propriety of removal shall be resolved in favor of the non-removing party. *Id.* (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)). Despite Defendant's efforts to recast Plaintiff's claim into a federal cause of action, Plaintiff alleges state law claims for nursing home negligence due to substandard care. The PREP Act is inapplicable here.

Defendants filed as supplemental authority a DHS General Counsel Advisory Opinion 20-04 regarding the PREP Act. Doc. 51-1. This opinion does not salvage their cause. As a preliminary matter, the Advisory Opinion does not bind the federal courts, nor does it have the "force or effect of law." *Id.* at 7. Moreover, the Advisory Opinion explains that the PREP Act "covers a broad range of entities when such entities take reasonable steps to follow public-health guidelines and directives in using covered medical products." *Id.* at 1. While the Opinion provides that PREP Act immunity can apply to private individuals and organizations, such coverage applies to these private entities only when acting in accordance with the PREP Act and the Declaration. The Opinion's discussion of the broad application of "administration" of "activities related to management and operation of programs and locations for providing countermeasures" was in the context of

9

operating a vaccination program. *Id.* at 7. Plaintiff does not allege that Defendants were in any way involved in a recommended activity such as the manufacture, testing, development, distribution, administration or use of any countermeasure. Plaintiff does not allege that any manufacture, testing, development, distribution, administration, or use of countermeasure caused or contributed to the injuries and death of Jack. Plaintiff does not assert any theory of liability that is in any way related to the Defendants' "physical provision" of any "countermeasure." Thus, the Court concludes Plaintiff's claims do not fall within the scope of the PREP Act, and therefore do not provide a basis for this Court's jurisdiction.

Defendants have failed to demonstrate that federal jurisdiction exists. Accordingly, it is hereby

    **ORDERED**:

    1.    Plaintiff's Motion to Remand (Doc. 33) is **GRANTED**.

    2.    This case is **REMANDED** to the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, Case No. 20-002755-CI, for lack of subject matter jurisdiction.

    3.    The Clerk is directed to transmit a certified copy of this Order to the Clerk of the Sixth Judicial Circuit Court, in and for Pinellas County, Florida.

    4.    The Clerk is further directed to terminate any pending deadlines and close this case.

    **DONE AND ORDERED** in Tampa, Florida on October 29, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any